UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERR LEATHERS, INC. | ) <br> ) <br> ) |
| Plaintiff, | ) Case No. <br> ) |
| v. | ) <br> ) |
| RUDDY, CASSIDY & FOSTER, LLC, ZURICH NORTH AMERICA d/b/a ZURICH COMMERCIAL and MARYLAND CASUALTY COMPANY,  and FARMERS INSURANCE | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## KERR LEATHERS, INC.'S COMPLAINT

Plaintiff, Kerr Leathers, Inc. (the "Plaintiff" or "Kerr"), by and through its undersigned counsel, files this civil action against defendants, Ruddy, Cassidy & Foster, LLC ("RCF"), Famers Insurance ("Farmers"), and Zurich North America d/b/a Zurich Commercial and Maryland Casualty Company ("Zurich") (hereinafter, collectively "Defendants") and alleges as follows:

### NATURE OF THIS ACTION

1.      This is an action for trademark infringement, unfair and deceptive trade practices, unfair insurance settlement practices and breach of an insurance contract. As described more fully below, Defendants have knowingly advertised, sold, offered to sell, distributed, and shipped Kerr products which were damaged in a warehouse fire and marked for salvage as "new" and/or "Department of Transportation ("DOT") Certified" Kerr helmets. Given the damage the Kerr products sustained in the warehouse fire, the products are unsafe,

1

will not perform as indicated and certainly should not be marketed as DOT certified. Marketing these Kerr products as either new or DOT certified, when in fact they are not, results in harm to Kerr's goodwill and reputation.

2. As a result of Defendants' actions, Kerr is suffering a loss of the vast goodwill Kerr has created in its trademarks and is losing profits from lost sales of improperly distributed products. This action seeks permanent injunctive relief and damages for Defendants' acts of infringement as stated herein. Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce irreparable injury to Kerr.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for all civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively. In addition, supplemental jurisdiction over related State law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

4. Defendants are subject to personal jurisdiction in the Commonwealth of Massachusetts pursuant to the Massachusetts long-arm statute, because Defendants practiced the unlawful conduct complained of herein, within the Commonwealth; because the unlawful conduct complained of herein causes injury within the Commonwealth; because the Defendants regularly conduct or solicit business within the Commonwealth; and because the Defendants regularly engage in business within the Commonwealth.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 as the majority of the Defendants' wrongful acts occurred in this district.

## PARTIES

6. Plaintiff Kerr Leathers, Inc. is a Massachusetts corporation with its principal place of business in Salem, Massachusetts. Kerr designs, manufactures, and sells a variety of motorcycle-related products, included high-quality helmets under the KERR trademark.

7. Upon information and belief, Defendant Ruddy, Cassidy & Foster, LLC is a limited liability company with its principal place of business at 700A Remington Road, Schaumburg, Illinois.

8. Upon information and belief, Defendant Farmers Insurance is a corporation with its principal place of business at 4680 Wilshire Blvd., Los Angeles, California.

9. Upon information and belief, Defendant Zurich North America d/b/a Zurich Commercial and Maryland Casualty Company is a corporation with its principal place of business in Schaumburg, Illinois.

## BACKGROUND

10. Kerr is a manufacturer of high quality motorcycle helmets and other motorcycle related products, which are sold under the KERR trademark.

11. The motorcycle helmets Kerr sells for use as safety devices pass extensive qualifications and have been DOT certified.

12. On November 30, 2010, an electrical fire broke out at Kerr's warehouse in Salem, Massachusetts, which housed Kerr products including Kerr motorcycle helmets.

13. In the fire, approximately $350,000 worth of Kerr products were damaged, either by flames, heat, extensive smoke and/or chemical exposure related to burning electrical wires and fire suppression.

14. Kerr had insurance coverage, including business personal property and lost business income, through Farmers and Zurich.

15. Kerr called its insurance providers, adjusters, and broker to assess the damage caused by the fire and to ensure insurance coverage for the lost products and has otherwise materially complied with all terms of its insurance policy.

16. Kerr reasonably determined that the products exposed to the fire in the warehouse were no longer suitable for sale to the general public as safety devices and that they must be scrapped.

17. On or about December 3, 2010, Defendants entered into a salvage contract (the "Contract") with Kerr whereby it would take the fire-damaged product from the warehouse, put the product in best possible order, and sell the damaged inventory as salvage.

18. As part of this agreement, and as a condition of Kerr agreeing to release the products as salvage as opposed to agreeing on a service or salvage credit, Kerr indicated and RCF and the insurer(s) agreed, that the products would only be released to RCF if all Kerr labels containing warranties, certifications or otherwise, were removed, that the products were marked as salvage and, that the products could not be re-sold to the public as safety devices.

19. As part of this agreement, RCF and the insurer(s) agreed that Kerr could remove labels and mark each product as salvage.

20. Kerr, together with Kerr's private adjuster, and RCF, did, in fact, remove all or substantially all of the attached product tags and marked all or substantially all of the product cartons with a large, red "S" for "salvage."

21. RCF took possession of the damaged products and then, on information and belief with the assistance and aid of the insurers, breached its agreement with Kerr and sold the

fire damaged Kerr products to motorcycle helmet dealers (the "Dealers") as "DOT certified" with full knowledge that the Dealers would resell these helmets to the general public to be used as safety helmets while riding motorcycles.

22. Having received the helmets at a salvage price, the Dealers then sold the Kerr helmets at marked-down prices, classifying the products as "new" and "DOT certified." In several cases, the prices offered by the Dealers were less than the cost of Kerr to manufacture the helmet.

23. Kerr received an influx of complaints from certified dealers who no longer could compete with the marked-down prices being offered throughout the internet by the Dealers.

24. Further, orders for Kerr products drastically and immediately declined as a result.

25. RCF sold the damaged products for, on information and belief, $98,499.03.

26. Under the terms of the Contract, RCF was required to report the results of the sale to Kerr and the insurer, keep these sale proceeds in escrow until the claim was adjusted and the parties to the contract released the proceeds to the rightful owner(s).

27. Kerr was entitled under the insurance contract and pursuant to principles of law to recover a portion of the proceeds to the extent its actual loss exceeded its policy limits relative to the business personal property.

28. As set forth above, Kerr's loss exceeded its policy limits and Kerr was therefore entitled to salvage proceeds.

29. Kerr made numerous demands to the insurer and RCF requesting the status of the salvage sales, including a statement of the balance of the escrow account.

30.     Despite the demands referenced in the previous paragraph, RCF and the insurer refused to provide any information to Kerr regarding the status of salvage sales or escrow and, in fact, actively concealed this information from Kerr.

31.     In fact, RCF released the funds immediately to Zurich and Farmers without notice to Kerr and before the loss had been determined and adjusted and concealed the fact that the funds had been released for well over a year despite demand from Kerr.

32.     Subsequent to the date RCF took possession of the salvage, and, on information and belief, subsequent to the transfer of funds to the insurer, Kerr requested the insurer provide an advance for the purpose of purchasing replacement property in order to obtain delivery in time for their peak sales season.

33.     Kerr indicated that the advance was urgent in order to ensure that the manufacturer could deliver the new products in a timely fashion given factors including labor delays during the Chinese New Year and the time associated with ordering, manufacture and shipment of products.

34.     Despite this request and despite the fact that the insurer took the sale from salvage proceeds, the insurer delayed payment of the advance, thus making it unlikely that Kerr could timely replace damaged inventory during its peak sales season.

35.     Further, RCF and the insurer, without Kerr's knowledge and prior to any appraisal or review of inventory or other business records, pre-determined that Kerr's actual loss did not exceed policy coverage for the purpose of ensuring that the insurer received all salvage sales proceeds.

36. RCF took specific steps in an attempt to limit the valuation of the claim to policy limits under the instructions of the insurer without Kerr's knowledge as to their role in valuing the loss.

37. Zurich and Farmers have never released any salvage related funds to Kerr and instead both RCF and Zurich continued to conceal from Kerr the fact that RCF released the funds to Zurich and Farmers.

38. Zurich and Farmers, in fact, have never provided Kerr with any written communication as to the basis of any dispute or disagreement with Kerr's loss claim.

39. Zurich and Farmers, in fact, simply determined that the loss equaled the policy limit and demanded a general release as a condition of the release of the remaining policy proceeds which were due.

40. Kerr refused to sign a general release and specifically reserved the claims brought herein.

41. Kerr's business halted as consumers flocked to purchase the marked-down Kerr helmets without knowledge that the helmets they were purchasing were damaged in a fire, were not in fact DOT certified, and were not under manufacturer's warranty.

42. Defendants' actions substantially harmed Kerr by depriving Kerr of the opportunity to earn profits from the sale of legitimate Kerr products to consumers.

43. Defendants' actions substantially harmed Kerr and consumers who ultimately purchase Kerr products from the Defendants without actual warranties.

44. Further, while Kerr's business was confronted with direct competition from its own products at substantially reduced prices, the insurer refused to appropriately adjust Kerr's

claim for loss of business income and delayed the payment of that claim based on their final position for over a year.

45. The insurer continues to withhold amounts due to Kerr under the loss of business income coverage.

46. Defendants' actions as described herein are the direct and proximate cause of Kerr going out of business.

## COUNT I
## VIOLATION OF KERR'S COMMON LAW AND FEDERAL TRADEMARK RIGHTS
**(Against All Defendants)**

47. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. Through use of the KERR mark since at least 1992, the KERR mark has developed a tremendous amount of goodwill in the market of motorcycle-related products.

49. The KERR mark is well-known, famous, inherently distinctive and/or has acquired distinctiveness and secondary meaning long prior to any use by Defendants. The goodwill associated with the KERR mark is a valuable asset, and Kerr has expended great effort and considerable resources in the promoting and advertising of its goods and services under the KERR mark.

50. As a result of this widespread and continuous use, the KERR mark has become widely associated with Kerr, identifies Kerr as the source of its goods and services sold, and represents the valuable goodwill of Kerr among members of the consuming public. The goodwill associated with the KERR mark is a valuable asset that provided Kerr the long term ability to compete in the motorcycle products market.

51. Defendants marketed and sold KERR helmets that were damaged structurally from heat, fire and smoke damaged as "new" KERR helmets.

52. Defendants marketed and sold KERR helmets as DOT approved that were not DOT approved due to damage the helmets sustained in the fire.

53. By selling altered products bearing the KERR mark that are materially different from product sold by Kerr under the same mark, Defendants have infringed upon Kerr's trademark rights.

54. By selling altered products bearing the KERR mark that are materially different from product sold by Kerr under the same mark, Defendants have created the false impression that these helmets are endorsed by or affiliated with Kerr.

55. By selling altered products bearing the KERR mark, Defendants are selling counterfeit Kerr products.

56. By reason of the foregoing, Kerr has been, and will continue to be, irreparably harmed and damaged by the Defendants' conduct, unless such conduct is enjoined by this Court.

## COUNT II
### BREACH OF CONTRACT
### (Zurich and Farmers)

57. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. Kerr, and Zurich and Farmers entered into a valid Insurance Contract whereby Kerr obtained insurance coverage for loss of business personal property and loss of business income as a result of hazards, including fire.

59. The Insurance Contract was supported by sufficient consideration.

60. Kerr complied with all duties and conditions of said Insurance Contract.

61. Defendants breached this Insurance Contract when they refused to pay over salvage proceeds improperly received by them from RCF.

62. Defendants breached this Insurance Contract when they refused to pay over a proper and appropriate amount due under the policy relative to Kerr's loss of business income coverage.

63. As a direct and proximate result of Defendants' breaches, Kerr has suffered damages.

## COUNT III
## BREACH OF CONTRACT
### (Against All Defendants)

64. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. Kerr, RCF, Zurich and Farmers entered into a valid Salvage Contract whereby RCF was to sell damaged products as salvage.

66. Under said agreement, RCF was prohibited from selling the damaged products as "new" or "DOT certified."

67. Despite the above agreement, RCF, in breach of the agreement, did in fact sell and market the damaged products as "DOT Certified."

68. Under said agreement, all parties agreed that RCF would sell the damaged products and place the proceeds in escrow until the rightful owners of the proceeds had been determined and all parties released said funds.

69. Despite the above agreement, Defendants breached this Contract when RCF released the funds immediately to Zurich and Farmers without notice to Kerr and before the loss had been adjusted.

70. The Salvage Contract was supported by sufficient consideration.

71. Kerr complied with all duties and conditions of said Insurance Contract.

72. As a direct and proximate result of Defendants' breaches, Kerr has suffered damages.

## COUNT IV
### BREACH OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

73. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74. By selling the salvage property to the Dealers with full knowledge that the Dealers would sell the helmets as new DOT approved helmets to the general public, Defendants breached the covenant of good faith and fair dealing within their salvage contract.

75. By concealing the release of funds from RCF to the insurer and by refusing to account when requested to do so, Defendants breach the covenant of good faith and fair dealing under within their salvage contract.

76. As a direct and proximate result of Defendants' breaches, Kerr has suffered damages.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (Against RCF)

77. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78. RCF owed and owes a fiduciary duty to Kerr to sell the salvage products in the best interests of Kerr.

79. Among the duties owed by RCF to Kerr are the Duty of Loyalty and the Duty of Care, both of which RCF breached.

80. RCF violated the duty of loyalty by concealing the transfer of funds from the sale of salvaged goods to the insurer at a time when Kerr had a right to elect to accept said insurance proceeds.

81. RCF violated the duty of care by transferring the funds from the sale of salvaged goods to the insurer without the consent of Kerr.

82. RCF further violated these duties by selling the salvaged helmets to the Dealers with full knowledge that they were not fit for resale and with full knowledge that the Dealers would sell them to the general public as fit to be used as safety helmets.

83. RCF's breaches of its fiduciary duties were reckless, willful, wanton, and intentional.

84. As a direct and proximate result of RCF's breaches, Kerr has been damaged and continues to be irreparably harmed.

## COUNT VI
## VIOLATION OF G.L. c. 93A
### (Against RCF)

85. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. Kerr and RCF are in the conduct of trade or commerce within the meaning of G.L. c. 93A and G.L. c. 176D, section 3.

87. RCF's representation to Kerr that is would not resell the products as new and would instead salvage the products constitutes an unfair and deceptive business practice pursuant to G.L. c. 93A and G.L. c. 176D, section 3.

88. RCF's trademark infringement, as described herein, is a per se unfair and deceptive business practice pursuant to G.L. c. 93A and G.L. c. 176D, section 3.

89. RCF's refusal to release the funds generated from the sale of salvaged Kerr products, despite repeated requests from Kerr, constitutes an unfair and deceptive business practice pursuant to G.L. c. 93A and G.L. c. 176D, section 3.

90. RCF committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

91. By reason of the foregoing, Kerr has been, and will continue to be irreparably harmed and damaged by RCF's conduct, unless such conduct is enjoined by this Court.

## COUNT VII
## VIOLATION OF G.L. c. 93A
### (Against Zurich and Farmers)

92. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93. Kerr, Zurich, and Farmers are in the conduct of trade or commerce within the meaning of G.L. c. 93A.

94. Zurich and Farmers' attempts to conceal the salvage sales and disbursement of funds from RCF despite repeated demands for the same from Kerr constitute unfair and deceptive business practice pursuant to G.L. c. 93A and G.L. c. 176D, section 3.

95. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.

96. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

97. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by refusing to pay claims without conducting a reasonable investigation based upon all available information.

98. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed.

99. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear.

100. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately

recovered in actions brought by such insureds.

101. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

102. Zurich and Farmers committed an unfair settlement claims practice as set forth in G.L. c. 176D, section 3, by failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

103. By reason of the foregoing, Kerr has been, and will continue to be irreparably harmed and damaged by Defendants' conduct, unless such conduct is enjoined by this Court

### COUNT VIII
### CONVERSION
### (Against Zurich and Farmers)

104. Kerr hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105. Kerr has an interest in the proceeds from the gross sales of Kerr products salvaged by RCF.

106. Zurich and Farmers have converted the proceeds for their own use by taking possession and control of the proceeds to the exclusion of the interest of Kerr.

107. Zurich and Farmers' use of the proceeds is without Kerr's permission and despite Kerr's requests for the same.

108. Zurich and Farmers' conduct as described above constitutes conversion of the proceeds, which has damaged Kerr.

109. Upon information and belief, the conversion of the proceeds by Zurich and Farmers was willful, intentional, reckless, and with conscious indifference to Kerr's rights.

110. Based on the forgoing, Kerr is entitled to judgment against Zurich and Farmers for their wrongful conversion of the proceeds, as well as all other actual and special damages, including punitive damages.

## RELIEF REQUESTED

WHEREFORE, Kerr prays for judgment in its favor and against the Defendants providing the following relief:

A. Enter judgment in favor of Kerr on the counts asserted herein and award any and all damages allowable on each of the counts asserted herein;

B. Award Kerr its reasonable attorneys' fees in bringing this action as allowed under the Lanham Act;

C. Award Kerr damages, treble damages, attorneys' fees and other costs as allowed by the Lanham Act;

D. Award Kerr statutory damages of up to $2,000,000.00 per mark as allowed by the Lanham Act for Defendants' sale of counterfeit products;

E. Award Kerr damages, treble damages, attorneys' fees and other costs allowed under G.L. 93A and G.L. c. 176D;

F. Award Kerr the costs incurred in bringing this action;

G. Award Kerr its pre and post judgment interest to the full extent allowed under the law;

H. Enter a permanent injunction restraining and enjoining RCF and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with RCF (or its agents) from selling, marketing, advertising, importing, or exporting Kerr products damaged in the fire; and

I. All other relief as this Court deems just and proper.

## JURY TRIAL CLAIM

Kerr hereby requests trial by jury on all claims so triable.

        Respectfully submitted,
        Plaintiff,
        Kerr Leathers, Inc.,
        by its attorneys,


*/s/ Morgan T. Nickerson*
Christopher S. Finnerty (BBO # 657320)
chris.finnerty@nelsonmullins.com
Anthony Laurentano (BBO# 561645)
Anthony.Laurentano@nelsonmullins.com
Morgan T. Nickerson (BBO # 667290)
morgan.nickerson@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Sq., 30th Floor
Boston, MA 02109
p. (617) 573-4700
f. (617) 573-4710

Dated: November 30, 2012